584 So.2d 27 (1991)
Bill GILMORE, et al., Appellants,
v.
HERNANDO COUNTY, Florida, et al., Appellees.
No. 90-1105.
District Court of Appeal of Florida, Fifth District.
June 27, 1991.
Rehearing Denied September 5, 1991.
Glen E. Greenfelder, Greenfelder, Mander, Hanson & Murphy, Brooksville, for appellants.
Robert Bruce Snow, Hernando County Atty., Brooksville, for appellees Hernando County, Fla. and Bd. of County Com'rs of Hernando County, Fla.
Donald E. Hemke, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellees Kama, Inc., John M. Daniel and Betty J. Daniel.
PER CURIAM.
Appellants (landowners bordering or near rezoned property) appeal from a final summary judgment which held there was no material fact question raised by the record before the trial court as to whether the challenged rezoning pursuant to section 163.3215(1), Florida Statutes (1989) was inconsistent with Hernando County's Comprehensive Plan. The trial court expressly applied the "fairly debatable" standard of review. We affirm, even though perhaps the trial court should have applied a stricter *28 review standard,[1] because appellants failed to demonstrate by affidavit or otherwise that the rezoning was inconsistent with the County's Comprehensive Plan. The subject property was rezoned from agricultural/rural (one residence per ten acres) to a commercial/residential Planned Unit Development (1.74 dwelling units per acre), in an area marked "urban-buildup", on the county's future use map, which potentially authorizes such density and intensity of use.
AFFIRMED.
COWART and GRIFFIN, JJ., concur.
W. SHARP, J., dissents with opinion.
W. SHARP, Judge, dissenting.
I respectfully dissent because I think the correct standard of review which should have been employed by the trial court is much stricter than the "fairly debatable" one commonly used in Florida zoning cases. Had it used the stricter review standard, I submit it would have properly concluded that material facts were created by this record concerning the consistency of the rezoning with the County's Comprehensive Plan. The matter should have proceeded to a full de novo hearing before the trial court.
The record in this case shows that the owners and developer of 89.95 acres in the Spring Lake area of Hernando County (the Daniels and Kama, Inc.) filed a zoning petition to change the zoning on the property from agricultural to commercial/Planned Unit Development project. Pursuant to the agricultural zoning, the density was one dwelling per ten acres. Under the new zoning, 5.12 acres was to be zoned commercial and the balance residential for 156 single-family residences (a density of 1.74 dwelling units per acre).
The Planning and Zoning Commission denied the rezoning request, based on staff recommendations that the rezoning was not consistent with Hernando County's Comprehensive Plan, or with the present uses of lands in the area. There was a "T-shaped" intersection within 1,700 feet of the subject acreage formed by county roads 541 and 572. But, the staff pointed out both roads are narrow, two-laned, and "substandard." The only commercial usage in the nearby area is a 7-11 type convenience store. The balance is all agricultural, or single-family dwellings on at least 10 acres.
The staff pointed out problems with permitting such increased density and intensity of usage in the middle of this essentially rural area. There is inadequate fire protection because the site is served by a volunteer fire department. No county water or sewer services are available. The utilities proposed by the developer (a package water plant and septic tanks) were not considered adequate "urban services" by the staff. It concluded that such intensive use as was proposed was incompatible with the surrounding uniformly agricultural character of land use.
At the County Commission level, the same facts were established. However, the attorney for the Daniels and Kama, Inc. represented to the Commission that the P.U.D.'s plan for septic tanks had been approved by the necessary county authorities. At the circuit court level, affidavits established this was not true. Counsel for the owners also argued the area was a burned out (frozen out) grove and no replanting was being done in the area. That also was countered by affidavits before the circuit court. Counsel for the owners also pointed out there was a nearby subdivision (Spring Lake Estates) platted in 1925, which permitted much higher density than one dwelling per 10 acres. However, that also was countered by an affidavit from the owner of that ancient platted land, that it had never been developed, and never would be, pursuant to the old plat; and that it was currently used for agricultural purposes. In a split decision, the County Commission chose to disregard the staff and the Planning and Zoning Commission's *29 recommendations. It approved the requested rezoning.
Carefully following all of the procedural steps required by Chapter 163,[1] appellants then filed a suit for injunctive relief in the circuit court to challenge the rezoning as not being consistent with the County's Comprehensive Plan. This kind of suit is not only authorized by the new statute, section 163.3215(1)) but it appears to be the sole or exclusive way to challenge a zoning decision (called a development order by the statute),[2] "which materially alters the use or density or intensity[3] of use of certain property" as not being consistent with a County's required Comprehensive Zoning Plan.[4] When such a "consistency" challenge is made in the circuit court, it should conduct a full hearing on the issues, hear expert witnesses, and consider the various interpretations of the Comprehensive Plan, where, as here, the Plan is not clear and unambiguous.[5] This procedure contrasts with the older method of review, essentially by writ of certiorari, where the trial court only reviews the record created by the zoning bodies.[6] When faced with an inconsistency challenge, the circuit court should create and establish a new record. That process was aborted in this case.
Appellants' pleadings and affidavits and the testimony before the zoning bodies (which were part of the record before the circuit court) create substantial questions and issues about the consistency of the rezoning with the Comprehensive Plan adopted by Hernando County. Those issues should only have been resolved by the trial court after a full hearing. Summary judgment was improper in this case. Landers v. Milton, 370 So.2d 368 (Fla. 1979); Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Atchley v. First Union Bank of Florida, 576 So.2d 340 (Fla. 5th DCA 1991); American Crime Prevention Corp. v. Computerized Monitoring Service, Inc., 539 So.2d 1175 (Fla. 5th DCA 1989).
The issue of consistency was adequately raised by appellants' extensive pleadings filed in the circuit court, together with attachments from the zoning proceedings. They established that the challenged rezoning constituted a great increase both in density and intensity of use; that the surrounding area was essentially rural and agricultural in current use; and that the proposed development would bring a great change to the rural character of the Spring Lake area. The reports and recommendations of the County's own staff, and testimony from affected landowners raised questions about traffic, fire protection, drainage and water pollution, and the adequacy of the septic tank plan for the P.U.D.
Affidavits filed in opposition to the County's motion for summary judgment, as well as other parts of the record also sufficiently refute, for summary judgment purposes, the County's argument that the Comprehensive Plan adopted by Hernando County permits, without formal amendment,[7] this commercial and high density residential use in the Spring Lake area. The county relied on the fact that Hernando County's future use map showed part (but not all) of the rezoned area as falling in the "urban buildup" area. The Comprehensive Plan basically incorporates the definition of the Florida Land Use and Cover Classification System for "urban buildup." That definition includes a very broad range of potential *30 uses: essentially, all possible uses of land except agriculture, range land, forested uplands, water, wetlands, and barren land.[8]
However, whether or not the Comprehensive Plan actually permits this P.U.D. in the Spring Lake area without an amendment to the Plan was put in issue as a material fact by various other items in the record. First is the Plan itself. The subject property is shown in the Current Use Map as agricultural/rural, with low density for residential use (1 dwelling per 10 acres). The Future Use Map shows part of it as in an "urban buildup" area, but no density or type of use is specified. That omission creates ambiguity as to what density was intended by the Plan for this area.
Jim King, a former employee of Hernando County, prepared an affidavit in opposition to the summary judgment, which refutes the County's position. King states he was involved in developing and preparing the land use and future density map for Hernando County in 1980. He described the staff's view, as well as his own, that the "urban buildup" areas shown on the future density map were intended to reflect existing uses, and to be consistent with other parts of the Plan. Along the "T" intersection of county roads 541 and 572, the maximum density allowed under the Plan would be 1 unit per 2 acres. Areas shown without any density beyond the intersection area would be limited to 1 dwelling per 10 acres. He concluded that the subject rezoning was inconsistent with the Comprehensive Plan.
Further, King pointed out that allowing this proposed dense residential and commercial use of the subject land was inconsistent with general guidelines adopted by the Comprehensive Plan. One is to discourage urban growth in areas remote from other urban areas. The Plan discourages "leapfrog" growth, and encourages preservation of the rural and agricultural character of the county.
The Plan also specifies as a guideline that coordinated and compatible urban development should be allowed only if adequate services are available. Arguably, they are not here. Another goal stated in the Plan is "to promote protection through preservation and conservation of the natural and cultural resources of historic Annoteblia and Chocachatte Hammocks." Appellants allege these hammocks will be threatened by the P.U.D., because of the P.U.D.'s proximity to them.
An additional error committed by the trial court in this case, which likely contributed to its granting summary judgment, was its application of a "fairly debatable" standard of review, which essentially is the least restrictive and most deferential to the zoning authority's decision.[9] While it may be properly applied in some zoning cases,[10] a stricter review standard should be engaged in by the circuit court when a zoning decision (or "development order") is challenged under section 163.3215(3)(b) as being inconsistent with the Comprehensive Plan adopted by the County.[11] This is because chapter 163 has limited the discretion of zoning boards and commissioners to rezone in a manner inconsistent with the Plan they adopt pursuant to the statute.[12] If *31 the rezoning is inconsistent, it is void, unless the zoning body undertakes to amend the Plan, as specified by the statute.[13]
The application of a stricter standard of review in "consistency" challenges to rezoning puts a much greater burden on the zoning authority to adduce evidence that the challenged rezoning or use is consistent with the overall plan.[14] The Third District has held that the county or the developer seeking to uphold the rezoning has the burden of proving the issue of consistency.[15] Other courts hold that the county must establish the consistency of the rezoning by sufficient and substantial evidence on the record before the circuit court.[16]
In this case, the issue of consistency was raised by appellants. As discussed above, the Comprehensive Plan for Hernando County contained many considerations and goals, some of which were not compatible with the County's rezoning. Properly, they should have been considered and weighed by the trial judge.[17] Further, the Plan was less than clear and unambiguous concerning the applicable density permitted for this property.[18] Two conflicting points of view were raised by the record before the circuit court. The conflict should be resolved only after studying the Plan en toto and hearing and considering the testimony of witnesses proffered by the parties.[19] Summary judgment in appellees' favor, based on this record, was erroneous.
NOTES
[1] See City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985) (Cowart, J., concurring).
[1] See, e.g., § 163.3215(4), Fla. Stat. (1987).
[2] See § 163.3164(6) & (7), Fla. Stat. (1987).
[3] § 163.3215(1), Fla. Stat. (1987).
[4] § 163.3215(3)(b), Fla. Stat. (1987); Leon County v. Parker, 566 So.2d 1315 (Fla. 1st DCA 1990). See B.B. McCormick & Sons v. Jacksonville, 559 So.2d 252 (Fla. 1st DCA 1990).
[5] See White v. Metropolitan Dade County, 563 So.2d 117 (Fla. 3d DCA 1990); B.B. McCormick & Sons v. Jacksonville, 559 So.2d 252 (Fla. 1st DCA 1990); Southwest Ranches Homeowners Ass'n, Inc. v. Broward County, 502 So.2d 931 (Fla. 4th DCA 1987); Alachua County v. Eagle's Nest Farms, Inc., 473 So.2d 257 (Fla. 1st DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986).
[6] See, e.g., City of Melbourne v. Hess Realty Corp., 575 So.2d 774 (Fla. 5th DCA 1991); Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940 (Fla. 5th DCA 1988); Hillsborough County v. Putney, 495 So.2d 224 (Fla. 2d DCA 1986).
[7] Section 163.3187, Fla. Stat. (1987).
[8] The County expert's affidavit said that it includes retail and wholesale stores, shopping centers, and residential, ranging in density from multifamily apartments to single-family residences on ten acre parcels. Specifically, the classification includes residential, transportation, communications and utilities, institutions, recreational, mixed uses, commercial/industrial, and open urban land.
[9] See 8 Fla.St.U.L.Rev. 499, 500 (1980). See, e.g., Florida Land Co. v. City of Winter Springs, 427 So.2d 170 (Fla. 1983); City of New Smyrna Beach v. Barton, 414 So.2d 542 (Fla. 5th DCA), rev. denied, 424 So.2d 760 (Fla. 1982).
[10] See City of Naples Airport Authority v. Collier Development Corp., 513 So.2d 247 (Fla. 2d DCA 1987).
[11] B.B. McCormick & Sons v. Jacksonville, 559 So.2d 252, 254 (Fla. 1st DCA 1990) (where rezoning is to a more intensive use); Norwood-Norland Homeowners' Association, Inc. v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987), rev. denied, 520 So.2d 585 (Fla. 1988); City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984), rev. denied, 469 So.2d 749 (Fla. 1985).
[12] 61 Fla.B.J. Aug. 71 (1987); White v. Metropolitan Dade County, 563 So.2d 117 (Fla. 3d DCA 1990); B.B. McCormick & Sons v. Jacksonville, 559 So.2d 252 (Fla. 1st DCA 1990); Southwest Ranches Homeowners Ass'n. v. County of Broward, 502 So.2d 931 (Fla. 4th DCA 1987); City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985) (Cowart, J., concurring).
[13] Section 163.3194(1)(b), Fla. Stat. (1987).
[14] Palm Beach County v. Allen Morris Co., 547 So.2d 690 (Fla. 4th DCA 1989); Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), rev. denied, 529 So.2d 693 (Fla. 1988).
[15] White v. Metropolitan Dade County, 563 So.2d 117, 128 (Fla. 3d DCA 1990); Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), rev. denied, 529 So.2d 693 (Fla. 1988); 8 Fla.St. U.L.Rev. 499, 505 (1980).
[16] B.B. McCormick & Sons v. Jacksonville, 559 So.2d 252 (Fla. 1st DCA 1990); Hillsborough County v. Putney, 495 So.2d 224 (Fla. 2d DCA 1986).
[17] Palm Beach County v. Allen Morris Co., 547 So.2d 690 (Fla. 4th DCA 1989). § 163.3194(3)(a) defines consistency as:

[I]f the land uses, densities or intensities, and other aspects of development permitted by such order or regulation are compatible with and further the objectives, policies, land uses, and densities or intensities in the comprehensive plan and if it meets all other criteria enumerated by the local government.
[18] The 1985 law requires that future use plans must contain ascertainable standards which can be followed concerning density and intensity of use. §§ 163.3161-163.3215, Atty Gen.Op. 85-56, July 31, 1985. If the Comprehensive Plan were as vague and unspecific for the subject area as appellees argue, it would not meet the requirements of the statute.
[19] See Southwest Ranches Homeowners Ass'n, Inc. v. County of Broward, 502 So.2d 931 (Fla. 4th DCA 1987). It is improper to take the County's affidavits that the rezoning is consistent at face value. B.B. McCormick & Sons v. Jacksonville, 559 So.2d 252 (Fla. 1st DCA 1990).